UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| ALADDIN MANUFACTURING CORPORATION, | Case No. 4:19-cv-00058-WMR |
| Plaintiff, | |
| vs. | |
| BRUMLOW MILLS, INC., | |
| Defendant. | |

**CLAIM CONSTRUCTION REPORT AND RECOMMENDATION**

## I.      INTRODUCTION

Plaintiff Aladdin Manufacturing Corporation ("Aladdin") asserts United States Patent Nos. 9,332,870 ("the '870 Patent") and 9,332,871 ("the '871 Patent") against Defendant Brumlow Mills, Inc. ("Brumlow").

Plaintiff submitted its Opening Claim Construction Brief on February 21, 2020 (Dkt. 31, herein "Pl. CC Opening"). Defendant summited its Opening Claim Construction Brief on the same day (Dkt. 30, herein "Def. CC Opening"). Both parties submitted their Responsive Claim Construction Briefs on March 25, 2020 (Dkt. 37, herein "Pl. CC Response"; Dkt. 36, herein "Def. CC Response"). Also before the Special Master are the parties' January 24, 2020 pre-briefing Joint Claim Construction Statement (Dkt. 23). Pursuant to the Court's Order Appointing Special

Master (Dkt. 22) the Special Master conducted a claim construction hearing on May 14, 2020. Based on the above-cited briefing as well as the oral arguments presented by counsel at the May 14, 2020 hearing, the Special Master recommends construing the disputed terms as set forth herein.

## II.    THE PATENTS-IN-SUIT

The Asserted Patents are directed to carpet components and methods of making carpet components including a tufted carpet substrate and an overprinted design. '870 Patent at 1:14-18. The '870 Patent claims a carpet component while the '871 Patent claims a method of making a carpet component. Both Patents claim priority to Provisional Application No. 61/025,693 ("the '693 Provisional"). In general, the carpet component of the '870 Patent and '871 Patent includes a carpet substrate having a texture comprising a pattern wherein the pattern comprises a plurality of adjoining design elements each defining a design and a boundary and wherein the design elements are arranged so that the design of one design element is not predictable from the design of an adjoining design element and an overprint disposed onto the carpet substrate wherein the overprint comprises a plurality of adjoining design elements each defining a design and a boundary and wherein the design elements are arranged so that the design of at least one design element is predictable from the design of an adjoining design element. *Id*. at Abstract.

## III.   LEGAL STANDARDS

The Special Master has applied the below principles of claim construction and indefiniteness. Indefiniteness is addressed because Brumlow asserts that at least four of the disputed terms are indefinite.

### A.     Claim Construction

The ultimate question of claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (citations omitted). Therefore, a court must look at the language of the claims to determine what the applicant regards as the invention. *Id.*; *see Markman v. Westview Instruments, Inc*., 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996). The words of a claim are generally given their ordinary and customary meaning, which is the meaning that the terms would have to a person of ordinary skill in the art at the time of the effective filing date of the patent application at issue. *Phillips*, 415 F.3d at 1313.

The *Phillips en banc* decision provides principles to follow during claim construction. First, the meaning of a claim term, as understood by a person of

ordinary skill in the art, should be based on the context of the particular claim, as well as the entire patent at issue, including its specification and prosecution history. *Id*.

Intrinsic evidence, such as the specification and prosecution history for the patent at issue, provides evidence of how the USPTO and the inventor understood the invention. *Id*. at 1317. The specification is usually the best guide to the meaning of the terms in the claims at issue. *Id*. at 1315. If the specification reveals a special definition given by the patentee to a claim term, the patentee's lexicography governs the construction. *Id*. at 1316. If the specification reveals a clear and unambiguous disavowal of claim scope, the disavowal dictates the correct claim scope. *Id*.

Although less reliable, extrinsic evidence, such as expert testimony, inventor testimony, dictionaries, and learned treatises, may also be considered in determining what a person of ordinary skill in the art would understand the claim terms to mean. *Id*. at 1317-19. However, such extrinsic evidence must be given less weight than intrinsic evidence. Furthermore, any expert testimony that is at odds with the intrinsic evidence (the claims themselves, the written description, and the prosecution history) should be discounted. *Id*. at 1318.

In addition, the Federal Circuit has noted that "claims are generally not limited to features found in what the written description presents as mere embodiments,

where the claim language is plainly broader." *Papst Licensing GmbH & Co. KG v. Fujifilm Corp.*, 778 F.3d 1255, 1265 (Fed. Cir. 2015) (citing *Phillips*, 415 F.3d at 1323).

### B.    Indefiniteness

Prior to the Supreme Court's decision in the *Nautilus* case, a claim was indefinite when it was "insolubly ambiguous" or "not amenable to construction." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (internal quotations and citations omitted). In *Nautilus II*, the Supreme Court observed that § 112, ¶ 2 requires "a delicate balance." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002)). On one hand, the court noted, the definiteness requirement must consider the inherent limitation of language. "Some modicum of uncertainty," the court recognized, is the "'price of ensuring the appropriate incentives for innovation.'" *Id.* (quoting *Festo Corp.*, 535 U.S. at 741). On the other hand, the court explained, a patent must be precise enough to afford clear notice of what is claimed, thereby "appris[ing] the public of what is still open to them. Otherwise, there would be a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims." *Id.* at 909 (internal quotation marks and citation omitted). The court further explained another

policy rationale: "absent a meaningful definiteness check . . . patent applicants face powerful incentives to inject ambiguity into their claims." *Id*. at 910.

Balancing these competing interests, the Supreme Court held that "[t]o determine the proper office of the definiteness command, . . . we read § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with *reasonable certainty*." *Id*. (emphasis added). "The standard adopted" by the Supreme Court "mandates clarity, while recognizing that absolute precision is unattainable." *Id*. It also accords with opinions of the Court stating that "the certainty which the law requires in patents **is not greater than is reasonable**, having regard to their subject-matter." *Id*. (quoting *Minerals Separation, Ltd. v. Hyde*, 242 U.S. 261, 370 (1916) (emphasis added).

## IV.   PERSON OF ORDINARY SKILL IN THE ART

A "preliminary matter that the Court must address before engaging in a construction of the claims is the issue of the level of skill in the art applicable to the interpretation of the [patent]. *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003). Brumlow proposed that a person of ordinary skill in the art ("POSITA") "is one who has five or more years of experience in the carpet tufting and design industry, or equivalent

training and education." Def. CC Opening at 6. Aladdin did not object to this POSITA definition or provide a competing definition. Therefore, for the purposes of claim construction, the Special Master has used the definition of POSITA proposed by Brumlow.

## V.   THE DISPUTED TERMS

Claim terms that at least one party contends require construction are set out below. The parties agree that all other terms do not require construction and the jury should be informed that these terms have their plain and ordinary meaning.

### A.    "a single carpet component" or "carpet component"

| Plaintiff's Proposed Construction | Defendant's proposed Construction |
|---|---|
| Plain and Ordinary Meaning | "a unit of broadloom carpet, a roll of tufted carpet, or the like, but excluding carpet tiles" <br><br> To the extent Plaintiff asserts this term covers other types of carpets, including carpet tiles, then this term is indefinite under 35 U.S.C. § 112. |

(Dkt. 23 at 2; Pl. CC Opening at 12; Def. CC Opening at 6; Pl. CC Response at 3; Def. CC Response at 18.) These terms appear in Claims 1, 3-7, and 10 of the '870 Patent as well as Claims 1, 5, and 8 of the '871 Patent. *Id.*

Aladdin first asserts that the claim terms "a single carpet component" and "carpet component" appear in a non-limiting preamble of their respective claim

terms and, therefore, do not require construction. Pl. CC Opening at 13. Brumlow disagrees, arguing that these claim terms are limiting for at least the reason that these preamble terms form an antecedent basis for limitations and terms in the claim body. Def. CC Response at 18.

"As a general rule preamble language is not treated as limiting." *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1327 (Fed. Cir. 2019) (quoting *Aspex Eyewear, Inc. v. Marchon Eyewear*, *Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012)). For example, preamble language is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Id.* at 1329 (quoting *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997)). However, preambles can be limiting where there is "dependence on a particular disputed preamble phrase for antecedent basis," and "the preamble is essential to understand limitations or terms in the claim body." *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-09 (Fed. Cir. 2002); *see also Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015) (finding preamble limiting "[b]ecause the preamble terms . . . provide antecedent bases for and are necessary to understand positive limitations in the body of [the] claims").

In this case, the terms "single carpet component" and "carpet component" in the claim preamble are antecedent basis for terms in the claim body. For example, Claim 1 of the '870 Patent recites **"[a] single carpet component** comprising: . . . an overprint disposed onto the carpet substrate to form **the single carpet component**." '870 Patent, 7:6-16 (emphasis added). Similarly, Claim 1 of the '871 Patent recites "[a] method for creating **a single carpet component** comprising the steps of: . . . overprinting a design onto the carpet substrate to form **the single carpet component**." '871 Patent, 7:7-17 (emphasis added). The term "carpet component" in the preamble of Claim 1 of both the '870 and '871 Patent are antecedent basis for the "carpet component" terms in the body of the respective claims. Therefore, the Special Master finds that these terms are limiting and do require construction.

The parties dispute over the scope of the "carpet component" term centers on whether it includes "carpet tiles." Pl. CC Opening at 14-15; Def. CC Opening at 6-8; Transcript, 128:22-129:4. The specification of the '870 Patent, the '871 Patent, and the incorporated '693 Provisional teach that a "carpet component" can include a carpet tile. '870 Patent at 6:25-28, Dkt. 31-5 at 1:9-12. However, Brumlow asserts that Aladdin disavowed carpet tiles in the prosecution history of the '870 and '871 Patents. Def. CC Opening at 6-8; Def. CC Response at 18-21. Aladdin argues that no such disavowal exists. Pl. CC Opening at 14-15; Pl. CC Response at 3-7.

Prosecution disclaimer "preclude[s] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). When a "patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of surrender." *Id.* at 1324. For example, limiting the scope of a claim to overcome a prior art rejection results in "narrow[ing] the meaning of the claim consistent with the scope of the claim surrendered." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013).

However, for "prosecution disclaimer" to apply to the construction of a claim, the arguments made in the patent office must rise to the level of a "clear and unmistakable disclaimer" or an "unequivocal disavowal" of claims scope. *See Phillips*, 415 F.3d at 1316-1317. *See also Tech. Props. Ltd. LLC v. Huawei Techs. Co., Ltd.*, 849 F.3d 1349, 1357-58 (Fed. Cir. 2017) ("The doctrine does not apply unless the disclaimer is both clear and unmistakable to one of ordinary skill in the art . . . . If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established." (internal quotations marks omitted)). Furthermore, "an examiner's unilateral statement does not give rise to a clear disavowal of claim scope by the applicant." *Alfred E. Mann*

*Found. For Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1341 (Fed. Cir. 2016); *see also Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("This court refuses to create a rule or presumption that the applicant in this case disavowed claim scope by silence"); *Sorenson v. Int'l Trade Comm'n*, 427 F.3d 1375, 1378-79 (Fed. Cir. 2005) ("[I]t is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of claims.").

Brumlow first argues that the Applicant disavowed the carpet tile scope in its Apr. 22, 2014 Office Action response in the '870 Patent. Def. CC Opening at 7. In the Apr. 22 Office Action Response, the Applicant "respectfully draw[s] the Examiner's attention to paragraph [002]" of the specification of the '870 Patent "for a discussion of carpet components" to overcome an indefiniteness rejection based on the carpet component term. Dkt. 30-2 at 2. Brumlow asserts that Applicant's direction to this particular paragraph of the '870 Patent specification disavows carpet tiles. However, paragraph [002] of the '870 Patent specification includes reference to "modular carpeting installations." '870 Patent at 1:14-26. At oral argument, counsel for Brumlow agreed that modular carpeting installations includes carpet tiles. Transcript at 150:9-14. Therefore, Applicant's direction of the Examiner to

11

paragraph [002] of the '870 Patent specification for a definition of carpet component does not equate to an "unequivocal disavowal" of the carpet tile claim scope.

Brumlow also argues that, in the '870 Patent, Applicant acquiesced to the examiner's limited scope of the "carpet component" term, thereby disavowing the carpet tile scope. Def. CC Opening at 7. Specifically, Brumlow points to the examiner's Sep. 10, 2015 Office Action in which a claim directed to carpet tiles was rejected based on the examiner's position that it was unsupported by the written description. *Id.*; Dkt. 30-3 at 3-4. In its response, the Applicant stated that "[w]hile Applicants do not necessarily agree with this rejection, Claim 25 has been canceled in order to facilitate further prosecution of the remaining claims." Dkt. 30-4 at 6. Rather than acquiesce to the Examiner's position, the Applicant makes clear that it does not agree with the examiner's interpretation of the scope of the '870 Patent's written description. This does not amount to an "unequivocal disavowal" of the carpet tile claim scope in other claims.

Lastly, Brumlow asserts that Applicant disavowed the carpet tile claim scope by failing to respond to the examiner's Reasons for Allowance in the Notice of Allowance of the '870 Patent. Def. CC Opening at 7-8. However, there is no requirement that an applicant respond to unliteral statements of the examiner to avoid prosecution disclaimer. Even the *TorPharm* case -- often quoted by Brumlow

-- makes clear that "[a] patentee is not required to fight tooth and nail every possibly adverse thought an examiner commits to paper, nor to advance redundant arguments for patentability." *TorPharm Inc. v. Ranbaxy Pharm., Inc.,* 336 F.3d 1322, 1330 (Fed. Cir. 2003). At oral argument, Brumlow argued that the totality of the prosecution history amounts to a disavowal. Transcript at 133:16-134:7. The Special Master disagrees. Therefore, the Special Master finds that the Applicant did not disavow claim scope related to carpet tiles in the '870 or '871 Patent File History.

The term "carpet component" is broadly defined in the specification and can be readily understood by a person of ordinary skill in the art. '870 Patent at 6:27-30. Because there was not a disavowal of claim scope during prosecution, there is no further ambiguity related to the scope of the term "carpet component." Therefore, the term does not require construction beyond its plain and ordinary meaning.

In conclusion, the Special Master recommends the terms "a single carpet component" and "carpet component" be given their **plain and ordinary meaning**.

B.     **"design elements" and "adjoining design elements"**

| Claim Term | Plaintiff's Proposed Construction | Defendant's proposed Construction |
| --- | --- | --- |
| "adjoining design elements" | Plain and Ordinary Meaning | "patterned features present within two or more adjacent sections or portions of the carpet component defined by substantially uniform shapes, such as rectangular |

| Claim Term | Plaintiff's Proposed Construction | Defendant's proposed Construction |
|---|---|---|
| | | blocks, squares, triangles, pentagons, or octagons" |
| "design elements" | Plain and Ordinary Meaning | "patterned features within a section or portion of the carpet component defined by a uniform shape, such as a rectangular block, square, triangle, pentagon, or octagon" |

(Dkt. 23 at 2; Pl. CC Opening at 15; Def. CC Opening at 8; Pl. CC Response at 8; Def. CC Response at 21.) These terms appear in Claims 1 and 10 of the '870 Patent as well as Claim 1 '871 Patent.

In its original proposed claim construction, Brumlow limited the "design elements" terms to "patterned textural features." Dkt. 23 at 2. Aladdin argued that the "design elements" claim terms reside not only in the textured carpet substrate, but also in the non-textured overprint. Pl. CC Opening at 17. In its Responsive Brief, Brumlow amended its proposed construction to exclude the term "textural." Def. CC Response at 21-22. Therefore, the Special Master considered Brumlow's amended proposed constructions of the "design elements" terms, as shown above.

Brumlow asserts that the term "design elements" requires construction because it is used in two different ways in the specification. Def. CC Opening at 14. Specifically, Brumlow argues that the specification uses the term "design elements"

to refer to both individual features of a pattern and the composite features of one section of a pattern. *Id*. Aladdin argues that the "design elements" terms "are straightforward and clear in the context of the claims" and, therefore, do not require construction. Pl. CC Opening at 15-16.

To the extent that there are two definitions of the term "design elements," as asserted by Brumlow, it is clear from the context of the claims which definition is applicable. For example, in Claims 1 and 10 of the '870 Patent, the claims recite that each design element includes "a design and a boundary." '870 Patent at 7:7-27 and 8:6:33. Therefore, in the context of these claims, the claim language makes clear that the term "design element" refers to a design within a boundary. Claim 1 of the '871 Patent does not use the term "design element" in the same context. Specifically, that claim does not define a "design element" as having a design and a boundary. Therefore, as read in the context of Claim 1 of the '871 Patent, the term "design elements" refers more broadly to features of a pattern or design. The narrower definition of "design element" in the parent '870 Patent claims is not imported into the child '871 Patent claims. *Sanofi v. Watson Labs. Inc.,* 875 F.3d 636, 650 (Fed. Cir. 2017).

The definition of the "design elements" terms are unambiguous in the context of their respective claims. Therefore construction of these term is unnecessary. *K-2*

*Corp. v. Salomon, S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999) ("a party wishing to alter the meaning of a clear claim term must overcome the presumption that the ordinary and accustomed meaning is the proper one, demonstrating why such alteration is required.")

Additionally, adopting the claim construction proposed by Brumlow would amount to importing limitations from the specification into the claims. It is improper to narrow claim terms to a preferred embodiment during claim construction. *Blackbird Tech LLC v. ELB Elecs., Inc.*, 895 F.3d 1374, 1377 (Fed. Cir. 2018). With regard to Claim 1 of the '871 Patent, Brumlow's construction would import the definition of design elements being a design within a boundary – which was not present in Claim 1 of the '871 Patent. Even with regard to Claims 1 and 10 of the '870 Patent, Brumlow's construction requires that the boundaries have **substantially uniform** shapes – a limitation not required by the claims as written. Because these claim terms are not ambiguous as written, it would be improper to import the additional limitations proposed by Brumlow.

In conclusion, the Special Master recommends the term "design elements" and "adjoining design element" be given its **plain and ordinary meaning**.

### C. "wherein the design elements are arranged so that the design of one design element is not predicable from the design of an adjoining design element"

| Plaintiff's Proposed Construction | Defendant's proposed Construction |
| --- | --- |
| "wherein the design elements are arranged so that the design of one element appears random (e.g. disjointed or discontinuous) from the design of an adjoining design element" | Indefinite under 35 U.S.C. § 112 <br><br> Alternatively: "wherein defined sections or portions of the carpet component including a series of substantially uniform shapes are rearranged to form a randomized or disjointed textured pattern such that the boundaries of patterned designs in adjacent individual portions are discontinuous or the design elements forming a textured pattern are different throughout the pattern such that there are no repeating textural design elements in any linear direction" |

(Dkt. 23 at 3-4; Pl. CC Opening at 5; Def. CC Opening at 11; Pl. CC Response at 10; Def. CC Response at 4.) These terms appear in Claims 1 and 10 of the '870 Patent. *Id.*

Brumlow asserts that this term is indefinite because it includes the term "not predictable." Def. CC Opening at 11-20. It argues that whether design elements are "not predictable" is subjective, and therefore does not have a defined scope. Aladdin asserts that the specification of the '870 Patent provides a POSITA with an objective definition of "not predictable," which renders it definite. Pl. CC Opening at 6-7.

Aladdin also points out that this argument was sufficient to overcome an indefiniteness rejection by the examiner. *Id*.

As explained above, "[a] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *See Powerbahn, LLC v. Found. Fitness LLC*, No. 1:17-cv-02965-AT, 2018 U.S. Dist. LEXIS 226089, at *27 (N.D. Ga. Aug. 27, 2018)) (quoting *Nautilus*, 572 U.S. at 901). Subjective claim terms may be held indefinite if whether it is infringed "depend[s] solely on the unrestrained, subjective opinion of a particular individual purportedly practicing the invention." *Datamize*, 417 F.3d at 1350. Whether the term "not predictable" has an objective definition requires analysis of the claim language, intrinsic evidence, and available extrinsic evidence.

Looking first to the language of the claim itself, both Claim 1 and 10 of the '870 Patent recite that each design element defines a "design and a boundary." The Claims then recite that the design elements are arranged "so that the design of one design element is not predicable from the design of an adjoining design element." In the context of these claims, it is clear that the standard for "not predictable" relates to a comparison between the design contained in a first design element boundary and the design in a second, adjoining design element boundary.

The specification further defines the "not predictable" term. The specification states in relevant part:

> Random or randomized, as used herein, is to be broadly interpreted to encompass disjointed patterns that may or may not repeat. A random or disjointed pattern is an unpredictable combination of design elements, where the design elements have a design and a boundary such as curves, lines, blocks or other shapes. The unpredictability may take the form of a substantial portion of the boundaries of the design elements are discontinuous. In some embodiments, the pattern includes a plurality of adjoining design elements in which each design element has a design and a boundary. The design elements may be arranged so that the design of one design element is not predictable from the design of adjoining design elements.

'870 Patent at 3:12-24. The specification uses the terms disjointed and discontinuous to further define the term "not predictable." *Id.* The specification also makes clear that predictability is determined based on a comparison between the design of one design element and the design of an adjoining design element. *Id*. Thus, it is clear from the claim language and the specification that whether the designs of two adjoining design elements is predictable or not predictable depends on the appearance along the shared boundary.

Both Aladdin and Brumlow presented case examples where courts determined whether claim language was indefinite due to its subjectivity. With respect to this term, the Special Master finds the *Interface* case to be instructive. In *Interface*, the disputed term "orthogonal ambiguity" was ruled definite based on the claim

language and specification. *Collins & Aikman Floor Coverings, Inc. v. Interface, Inc.*, No. 4:05-CV-0133-HLM, 2007 U.S. Dist. LEXIS 98537, at *32 (N.D. Ga. May 29, 2007). The Northern District of Georgia found that the "specification explains that it is usually readily apparent when a tile has been misplaced in a traditional carpet tile installation, and that an 'orthogonally ambiguous' pattern makes it impossible for tiles to look out of place by 'mask[ing] the visual effects of having adjacent carpet tiles with misaligned or differently-oriented naps and also mask[ing] slight color variations resulting from dye lot differences.'" *Id.* The '870 Patent similarly states that when "the unpredictable pattern on the carpet substrate is not aligned, its unpredictable nature may minimize the visual effect of imperfections or variations in the overprint design between adjacent carpet components." '870 Patent at 6: 47-51. Like in *Interface*, the meaning of "not predictable" set forth in the claims of the '870 Patent and the specification is reasonably clear and precise to a POSITA and therefore the claim term is not ambiguous.

The *Interface* case also confronted an argument raised by Brumlow related to the identity of the viewer who perceives the carpet design. *Interface*, 2007 U.S. Dist. LEXIS 98537, at *23-24. There, the Defendants argued "that neither the patent, the prosecution history, nor the art define the 'ordinary viewer'" and " virtually every witness conceded that people have different perspectives and personal tastes, both

of which will be impacted by the viewing conditions under which their perceptions are tested." *Id*. This argument did not carry weight with the court. *Id*. Brumlow similarly argues that the "not predictable" term is indefinite because there is no guidance regarding who finds the design "not predictable." Def. CC Opening at 12-14; Def. CC Response at 5-8. Like in *Interface*, the Special Master is not persuaded by this argument.

The prosecution history also supports the above interpretations the '870 Patent's claims and specification. While the Examiner initially rejected the application on the grounds that "the scope of what makes one design element 'predictable' or 'not predictable' from an adjoining design element is unclear," the Applicant overcame that rejection by directing the examiner to the portion of the specification included above. Dkt. 31-6 at 109-10 and 132-33. Additionally, the Examiner was able to apply a definition of "not predictable" in its analysis of prior art. In discussing the Magree reference the Examiner found "[t]he base pattern of unique, random designs corresponds to applicant's pattern of 'not predictable' adjoining design elements and the overlay pattern of a unifying pattern corresponds to applicant's overprint of 'predictable' adjoining design elements." *Id*. at 182. The '870 Patent's prosecution history does not indicate that the Examiner did not understand the specification's use of the phrase "not predictable" after the Applicant

overcame the initial indefiniteness objection. Thus, the prosecution history and the Examiner's analysis and comments regarding the term "not predictable" supports a finding that the term is definite.

The Special Master also reviewed extrinsic evidence in the form of the declarations and deposition testimony of Lewis Migliore. In its response claim construction brief, Brumlow argued that Mr. Migliore was unqualified to provide an expert opinion regarding the patents at issue. Def. CC Response at 1-4. However, Brumlow relied heavily on Mr. Migliore's deposition testimony when arguing that the "not predictable" term of the '870 Patent is indefinite. *Id*. at 6-12. Brumlow bears the burden of proving the "not predictable" term is indefinite by clear and convincing evidence. *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.,* 844 F.3d 1370, 1377 (Fed. Cir. 2017). Mr. Migliore's testimony did not provide clear and convincing evidence that the term "not predictable," as defined by the claim language and specification of the '870 Patent, does not inform, with reasonable certainty, those skilled in the art about the scope of the invention.

For the reasons set forth above, the term "not predictable" as used in Claims 1 and 10 of the '870 Patent is defined in reasonably clear and precise terms such that it is definite. The definition in the specification is consistent with the patent history

and is not sufficiently rebutted by extrinsic evidence. Therefore, the claim term is definite.

Aladdin and Brumlow each provided a proposed construction for "not predictable." Aladdin's construction is consistent with the explanation of the "not predictable" provided in the specification of the '870 Patent. Brumlow's construction limits the term "not predictable" to a specific embodiment for creating an unpredictable pattern described in '870 Patent. '870 Patent at 3:25-63. As with the "carpet component" term, Brumlow argues that the Applicant limited the scope of the '870 Patent during prosecution.

As explained above, for "prosecution disclaimer" to apply to the construction of a claim, the arguments made in the patent office must rise to the level of a "clear and unmistakable disclaimer" or an "unequivocal disavowal" of claims scope. *See Phillips*, 415 F.3d at 1316-1317. *See also Tech. Props. Ltd.*, 849 F.3d at 1357-58 ("The doctrine does not apply unless the disclaimer is both clear and unmistakable to one of ordinary skill in the art . . . . If the challenged statements are ambiguous or amenable to multiple reasonable interpretations, prosecution disclaimer is not established." (internal quotations marks omitted)).

Brumlow argues that the Applicant's statements in its Oct. 20, 2014 Office Action Response in the '871 Patent  amount to an "unequivocal disavowal" of all

claim scope outside of the specific embodiment. Def. CC Opening at 15-17. However, the portion of the Response quoted by Brumlow is from a portion of the Office Action Response discussing a dependent claim directed to the specific embodiment. Dkt. 30-9 at 5-6. These statements, in the context of the Office Action Response as a whole, do not amount to an unequivocal disavowal of all claim scope beyond the specific embodiment for all claims of the '871 Patent and the '870 Patent. Because the Applicant did not disavow claim scope related to the method of creating the "not predictable" pattern, importing limitation from that specific embodiment in claim construction would be inappropriate. Therefore, Brumlow's proposed construction is improper.

In conclusion, the Special Master recommends that this term be construed as "**wherein the design elements are arranged so that the design of one element appears random (e.g. disjointed or discontinuous) from the design of an adjoining design element.**"

D.   **"wherein the design elements are arranged so that the design of at least one design element is predictable from the design of an adjoining design element"**

| Plaintiff's Proposed Construction | Defendant's proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | Indefinite under 35 U.S.C. § 112 |
| | Alternatively: "wherein defined sections or portions of the carpet |

|  | component including a series of substantially uniform shapes are arranged such that the boundaries of the patterned printed designs are continuous or printed design elements repeat throughout the pattern in a linear direction" |
|--|--|

(Dkt. 23 at 5; Pl. CC Opening at 10; Def. CC Opening at 20; Pl. CC Response at 21; Def. CC Response at 15.) These terms appear in Claims 1 and 10 of the '870 Patent. *Id*.

Brumlow argues that the "predictable" claim term mirrors the "not predictable" claim term and so "for the same reasons … the claim language is indefinite on its face." Def. CC Opening at 20; Def. CC Response at 15. Aladdin similarly argues that the definiteness of "predictable" and "not predictable" are linked. Pl. CC Opening at 11. For the reasons set forth above, the claim term "not predictable" in the '870 Patent is definite. The claim term "predictable" in the '870 Patent is also definite for the same reasons.

Unlike the "not predictable" claim term, Aladdin argues that the "predictable" claim term in the '870 Patent should be given its plain and ordinary meaning. *Id*. However, Aladdin concedes that "[t]o the extent construction is warranted, the Court should not adopt Brumlow's construction, but instead one that is the opposite of Aladdin's "unpredictable" constructions (i.e. "not random (not disjointed and not

discontinuous)." *Id*. Brumlow argues that its proposed construction is consistent with the specification.

However, Brumlow's proposed construction appears to inject ambiguity into the "predictable" claim term rather than resolve it. Brumlow's proposed construction provides two definitions for predictable: (1) "wherein defined sections or portion of the carpet component including a series of substantially uniform shapes are arranged such that the boundaries of the patterned printed designs are continuous" **or** (2) wherein the "printed design elements repeat throughout the pattern in a linear direction." In addition to providing competing definitions of the "predictable" claim term, each of Brumlow's definitions is flawed. The first portion of Brumlow's proposed construction describes the "patterned printed designs." In the '870 Patent, the claim term "pattern" is only used to describe the textured carpet substrate, whereas the "predictable" claim term describes the non-textured overprint. Therefore, the term "patterned printed designs" does not make sense in the context of the '870 Patent claims. In the second portion of Brumlow's proposed construction, Brumlow inserts the limitation that the design elements repeat throughout the pattern in a linear direction. Again, Brumlow inserts the pattern term into a construction related to the overprint. Therefore, no portion of Brumlow's construction is appropriate.

In conclusion, the Special Master recommends that this term be construed as **"wherein the design elements are arranged so that the design of one element does not appear random (e.g. disjointed or discontinuous) from the design of an adjoining design element."**

### E. "unpredictable combination of design elements" and "predictable combination of design elements"

| Claim Term | Plaintiff's Proposed Construction | Defendant's proposed Construction |
|---|---|---|
| "unpredictable combination of design elements" | "a combination of design elements that appears random (e.g., disjointed or discontinuous)" | Indefinite under 35 U.S.C. § 112<br><br>Alternatively:<br>"arrangement of sections or portions of the carpet component defined by substantially uniform shapes such that the boundaries of patterned designs in adjacent sections or portions are discontinuous or the design elements forming a textured pattern are different throughout the pattern such that there are no repeating textural design elements in any linear direction" |
| "predictable combination of design elements" | Plain and Ordinary Meaning | Indefinite under 35 U.S.C. § 112<br><br>Alternatively:<br>"arrangement of sections or |

| | | portions of the carpet component defined by substantially uniform shapes such that the boundaries of patterned printed designs in adjacent sections or portions are continuous or the printed design elements repeat throughout the pattern in a linear direction" |
|---|---|---|

(Dkt. 23 at 3-5; Pl. CC Opening at 5 and 10; Def. CC Opening at 11 and 20; Pl. CC Response at 10 and 21; Def. CC Response at 4 and 15.) These terms appear in Claim 1 of the '871 Patent. *Id.*

Both Aladdin and Brumlow made arguments regarding the "predictable" and "unpredictable" claim terms of Claim 1 of the '871 Patent in tandem with the "predictable" and "not predictable" of the '870 Patent. However, when interpreting a claim term, a POSITA is directed to read the term "in the context of the particular claim in which the disputed term appears." *Phillips*, 415 F.3d at 1313. The language of Claim 1 of the '871 Patent provides a different context than the claims of the '870 Patent.

As explained above, the '870 Patent defined its "design elements" as having a design and a boundary." '870 Patent at 7:7-27 and 8:6:33. The '870 Patent claims provide that the term "not predictable" relates to a comparison between the design

contained in a first design element boundary and a design in a second, adjoining design element boundary. This structure is consistent with the specification that uses the terms disjointed and discontinuous to further define the term "not predictable." '870 Patent at 3:12-24. The specification also makes clear that predictability is determined based on a comparison between the design of one design element and the design of an adjoining design element. *Id*. Thus, it is clear from the claim language of the '870 Patent that whether the designs of two adjoining design elements is predictable or not predictable depends on the appearance along the shared boundary.

The language of Claim 1 of the '871 Patent does not provide that a design element includes a design and a boundary. Claim 1 of the '871 Patent recites:

> 1. A method for creating a single carpet component comprising the steps of:
> creating a pattern having an **unpredictable** combination of design elements; tufting yarn into a primary backing and creating a carpet substrate having a plurality of repeats of the pattern formed by: (a) different loop height, (b) different cut pile height, or (c) selective cut and uncut tufts, and
> overprinting a design onto the carpet substrate to form the single carpet component, wherein the design comprises a **predictable** combination of design elements, and
> wherein the relationship between the design and the overall pattern of the carpet substrate is not in register.

'871 Patent at 7:7-18. Without the boundary limitation present in the claims of the '870 Patent, the term "design element" in the '871 Patent is broader. For example,

in its discussion of Figure 6, the '871 Patent describes the leaves in the design as "design elements." '871 Patent at 6:32-39. The design element leaves are present in the predictable, overprint design. *Id*. Whether design elements, such as leaves, are arranged in a predictable or unpredictable combination depends solely on the unrestrained, subjective opinion of a particular individual. Without some objective standard to determine the scope of these terms, they are indefinite. *Datamize*, 417 F.3d at 1350.

The only explanations for determining whether design elements are predictable or not predictable are ones where the designs are compared along a boundary. When Figure 6 of the '871 Patent was discussed at oral argument, Aladdin explained that the overprint design of the Figure is predictable because if the design was cut along a seam line (16), one of skill in the art would line up a portion of the leaf design on one side of the seam line with the portion of the leaf on the other side of the seam line. Transcript 121:21-122:16. This explanation is consistent with the "design element" term as used in the '870 Patent because the seam line would represent the design element boundary. However, when the design elements are any object arranged on the carpet, regardless of seams or boundaries, there is no objective measure of predictability. Because, in the context of the claim language of the '871 Patent, a "design element" can be any object or design in the carpet substrate or

overlay, regardless of boundary, the terms "predictable" and "unpredictable" are subjective and without objective measure.

In conclusion, the Special Master recommends that the terms "unpredictable" and "predictable" in Claim 1 of the '871 Patent be found **indefinite**. The Special Master has only provided a recommendation with regard to these claim terms in Claim 1 of the '871 Patent alone. The Special Master has not analyzed whether these terms are definite in the context of dependent Claims 2-9.

F.     **"not in register"**

| Claim Language | Plaintiff's Proposed Construction | Defendant's proposed Construction |
|---|---|---|
| "wherein the carpet substrate pattern and the overprint are not in register" | Plain and Ordinary Meaning | "wherein the carpet substrate pattern and the overprint are intentionally misaligned and do not have a defined spatial relationship" |
| "wherein the relationship between the design and the overall pattern of the carpet substrate is not in register" | Plain and Ordinary Meaning | "wherein the design and the overall pattern of the carpet substrate are intentionally misaligned and do not have a defined spatial relationship" |

(Dkt. 23 at 6; Pl. CC Opening at 22; Def. CC Opening at 23; Pl. CC Response at 23; Def. CC Response at 23.) These terms appear in Claims 1 and 10 of the '870 Patent and Claim 1 of the '871 Patent. *Id.*

Aladdin asserts that the meaning of "not in register" is "straight forward, well-known in the art, and clear in the context of the claims" and does not require construction. Pl. CC Opening at 22. Brumlow asserts that its construction where the term "not in register" is replaced with "intentionally misaligned and do not have a defined spatial relationship" is appropriate. Def. CC Opening at 23-25. Aladdin argues that Brumlow's construction should be rejected because it is unnecessary and interjects an intent requirement into the claims. Pl. CC Opening at 23.

At issue is whether the term "not in register" should be limited to intentional misalignments between the overprint design and the patterned substrate. At oral argument, Brumlow expressed concern regarding accidental misalignment due to a substrate stretching or bowing as it is processed. Transcript at 186:14-187:12. Aladdin responded that it does not consider "unintentional misalignment that happens during the printing process" to be part of the plain and ordinary meaning of the claim term "not in register." *Id.* at 189:1-18. With that understanding, there is no ambiguity regarding the meaning of the claim term "not in register." Therefore, further construction is not required.

In conclusion, the Special Master recommends the term "not in register" be given its **plain and ordinary meaning**.

## VI.    AGREED-UPON TERMS

At oral argument, counsel for the parties indicated they had to come to an agreement regarding the following terms. Transcript at 183:15-185:17. The special master recommends that the agreed upon constructions for the following terms be adopted, as agreed upon by the parties.

### A.    "overprint" and "overprinting"

| Claim Term | Plaintiff's Proposed Construction | Defendant's proposed Construction |
|---|---|---|
| "an overprint disposed onto the carpet substrate to form the single carpet component" or "an overprint disposed onto the carpet substrate" | Plain and Ordinary Meaning | "a printed design applied on top of a textured carpet substrate" |
| "overprinting of a design onto the carpet substrate to form the single carpet component" | Plain and Ordinary Meaning | "printing a design on top of a textured carpet substrate" |

(Dkt. 23 at 5-6; Pl. CC Opening at 20; Def. CC Opening at 22; Pl. CC Response at 22; Def. CC Response at 23.) These terms appear in Claims 1 and 10 of the '870 Patent and Claim 1 of the '871 Patent. *Id*.

Per the agreement between the parties, the Special Master recommends that these terms be given their **plain and ordinary meaning**.

### B.   **"overall pattern of the carpet substrate"**

| Plaintiff's Proposed Construction | Defendant's proposed Construction |
|---|---|
| Plain and Ordinary Meaning | Indefinite under 35 U.S.C. § 112<br><br>Alternatively: "the tufted pattern of the textured carpet substrate" |

(Dkt. 23 at 6; Pl. CC Opening at 23; Def. CC Opening at 25; Pl. CC Response at 24; Def. CC Response at 25.) These terms appear in Claim 1 of the '871 Patent. *Id*.

Per the agreement between the parties, the Special Master recommends that this term be given its **plain and ordinary meaning**.

### C.   **"repeated", "repeating", "repeats"**

| Plaintiff's Proposed Construction | Defendant's proposed Construction |
|---|---|
| Plain and Ordinary Meaning | "duplication of a pattern unit or design element(s) at known intervals or dimensions" |

(Dkt. 23 at 6-7; Pl. CC Opening at 25; Def. CC Opening at 27; Pl. CC Response at 25; Def. CC Response at 25.) These terms appear in Claims 1, 3, 4, 10, and 14 of the '870 Patent and Claim 1 and 5-7 of the '871 Patent. *Id*.

Per the agreement between the parties, the Special Master recommends that these terms be given their **plain and ordinary meaning**.

## VII.   CONCLUSION

Accordingly, it is recommended that the claim terms be construed as set forth in Sections V and VI above.

Dated: June 25, 2020

_____
William B. Dyer III, Special Master
LEE & HAYES, P.C.
75 14th Street, Suite 2500
Atlanta, GA 30309
Telephone: (404) 736-1857
Facsimile: (404) 815-1700
Email: bill.dyer@leehayes.com